1  Mark Eisen (SBN - 289009)
   meisen@edelson.com
2  EDELSON PC
   555 West Fifth Street, 31st Floor
3  Los Angeles, California 90013
   Tel: 213.533.4100
4  Fax: 213.947.4251

5  Steven L. Woodrow*
   swoodrow@edelson.com
6  Megan Lindsey*
   mlindsey@edelson.com
7  EDELSON PC
   999 West 18th Street, Suite 3000
8  Denver, Colorado 80202
   Tel: 303.357.4878
9  Fax: 303.446.9111

10 [Additional counsel appearing on signature page]

11 * *Pro Hac Vice* admission to be filed

12 *Attorneys for Plaintiffs and the Putative Classes*

13
14              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15  ROBERT JORDAN, SEAN HALBERT and DANA SKELTON, individually and on 16  behalf of all others similarly situated, | Case No. 3:14-cv-787 |
| 17                     *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| 18         v. | **DEMAND FOR JURY TRIAL** |
| 19  NATIONSTAR MORTGAGE LLC, a Delaware limited liability company, 20 | |
| 21                     *Defendant*. | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Robert Jordan, Sean Halbert, and Dana Skelton bring this class action complaint against Defendant Nationstar Mortgage LLC, to stop Defendant's practice of making unsolicited phone calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Defendant Nationstar Mortgage is mortgage lender and servicer.

2. In the normal course of its business, Defendant has repeatedly made unsolicited telephone calls to Plaintiffs' and the other putative Class members' telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

3. By making the telephone calls at issue in this Complaint, Defendant has caused Plaintiffs and the members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, the monies paid to their wireless carriers for the receipt of such telephone calls, and the violation of their statutory right to be free from such calls.

4. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. Defendant made these calls despite the fact that neither Plaintiffs nor the other members of the putative Class ever provided their cellular telephone numbers to Defendant, or any other entity for any purpose related to their mortgages, and they never provided Defendant consent to be called on the specific telephone numbers Defendant actually called.

5. In response to Defendant's unlawful conduct, Plaintiffs bring the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6. Plaintiff Robert Jordan is a natural person and citizen of the State of California.

7. Plaintiff Sean Halbert is a natural person and citizen of the State of California.

8. Plaintiff Dana Skelton is a natural person and citizen of the State of California.

9. Defendant Nationstar Mortgage LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 350 Highland Drive, Lewisville, Texas 75067. Defendant Nationstar Mortgage is also registered to do business with the California Secretary of State (entity number 200109410005). Nationstar Mortgage does business throughout the United States, the State of California, and in this District.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute.

11. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District, directs telephone calls here, solicits customers here, and enters into consumer and business contracts here. Additionally, Plaintiff Jordan resides in this District and received phone calls from Defendant in this District.

## COMMON FACTUAL ALLEGATIONS

12. Nationstar is a "non-bank residential mortgage servicer with a range of services across the residential mortgage product spectrum." In providing its services, however, Nationstar has engaged in the widespread practice of calling consumers' telephones without the call recipients' prior express consent.

13. Defendant placed and continues to place repeated phone calls to consumers who never provided the number called to Defendant or any third party associated with their respective mortgages. Instead, Defendant acquires phone numbers through various means such as "skip tracing" or "number trapping."

14. Defendant's calls are made for the purpose of collecting alleged debts or to "remind" consumers to pay their mortgage.

15. Defendant's calls often come on a daily basis—often multiple times per day.

16. Defendant's calls also feature artificial or pre-recorded messages instead of live operators

17. Making Defendant's calls all the more problematic, the pre-recorded messages do not provide an option to stop the calls, and in order to speak with a live operator and request that the calls stop, a consumer must provide personal identifying information such as a social security number.

18. This barrier is particularly problematic because Defendant places unwanted telephone calls to consumers who have *no debt or mortgage with or serviced by Defendant whatsoever*. Instead, calls are repeatedly placed to the wrong consumer when Defendant is looking for an entirely different person.

19. Even when consumers are called and connected to a live operator—and even when they make explicit requests to Defendant to stop receiving telephone calls from Defendant—the calls continue in direct contradiction to those requests.

20. In making the calls at issue in this Complaint, Defendant, and/or its agents utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers or recordings and disconnecting the rest of the calls (or placing them on hold). Accordingly, consumers receiving calls from Defendant and/or its agents are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").

21. Defendant was and is aware that the above described telephone calls were and are being made to consumers without their prior express consent to receive them.

**FACTS SPECIFIC TO PLAINTIFF JORDAN**

22. Plaintiff Jordan does not have a mortgage held by, serviced by, or in any other way associated with Defendant Nationstar. In fact, Plaintiff Jordan does not have any home loans at all.

23. Nevertheless, Defendant has placed numerous calls to Plaintiff Jordan's cellular telephone since at least July 2013, often weekly, from the phone number (888) 811-5279.

24. The telephone number (888) 811-5279 belongs to and connects directly to Defendant Nationstar.

25. When Plaintiff Jordan answered these calls he heard an artificial or pre-recorded voice identifying the caller as Nationstar and requesting that he call Nationstar back. However, when Plaintiff Jordan called Nationstar back to stop the calls, he was greeted with another pre-recorded message directing him to input his telephone number and Social Security number to identify his loan. Because Plaintiff Jordan does not have a loan with Defendant, he was unable to get past these requests. Additionally, pressing "0" only brought him back to the main menu. As such, despite Plaintiff Jordan's best efforts he could not stop the calls and they continued on a repeat basis.

26. In a final effort to stop the calls, Plaintiff Jordan has put a block on his phone line for the number (888) 811-5279.

27. Plaintiff Jordan did not consent to receive calls of any kind from Defendant.

28. Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Jordan's cellular telephone number without his prior express consent to receive them.

**FACTS SPECIFIC TO PLAINTIFF HALBERT AND SKELTON**

29. Plaintiffs Halbert and Skelton are married. Their mortgage is held by Defendant Nationstar.

30. Since their mortgage was transferred to Defendant, Halbert and Skelton have always timely made their payments within the allotted grace period.

31. Yet, shortly after the mortgage was transferred to Nationstar in March 2012, and having made no payments outside of Defendant's grace period, Plaintiffs Halbert and Skelton each began receiving numerous phone calls on their cellular telephones aggressively "reminding" them to make payments, even though the payments were not yet beyond the grace period. Many of these calls featured an artificial or pre-recorded voice. The calls came from, at the very least, the phone

number (877) 698-9400. The telephone number (877) 698-9400 belongs to Defendant Nationstar.

32. If Plaintiffs Halbert and Skelton did not answer the calls, Defendant would leave a voicemail stating "This is Nationstar calling regarding your account, it's urgent you contact us in the next 24 hours."

33. Plaintiffs Halbert and Skelton placed a telephone call to Defendant in March 2012 and requested to be taken off the call list because their account was in good standing and they always paid within the grace period. The customer service representative verified that Defendant had received Plaintiffs Halbert and Skelton's payment at the same day each month and that the payments had been late. The customer service representative ensured Halbert and Skelton that they would not be called again.

34. Despite the representative's assurances, in April 2012 the calls resumed from Nationstar.

35. Because Defendant would not stop making calls, and Plaintiffs Halbert and Skelton found the calls to be a personal invasion of privacy and harassing, Plaintiff Skelton submitted a formal complaint to the Better Business Bureau ("BBB") about the calls indicating, "We would like the illegal collection calls to stop." The BBB forwarded the complaint to Defendant Nationstar.

36. Shortly thereafter, Plaintiffs received a letter from Defendant Nationstar indicating that it had received the complaint. Defendant's letter stated "We received notification from the Better Business Bureau on April 11, 2012 regarding your request to cease and desist collection calls on the above mentioned account. Please accept our apology if you have experienced any inconvenience in this matter. Your account has been coded to cease the collection calls."

37. While the calls did cease for a time, Defendant yet again began making calls to both Plaintiff Halbert and Plaintiff Skelton approximately six months later.

38. Plaintiff Halbert answered several of these calls and, after being connected to a live operator, explicitly requested that the calls to him and wife cease. This, however, again failed to stop the calls.

39. Since that time, the calls have continued monthly up to and including the present.

40. Defendant was and is aware that it was making the relevant calls to Plaintiff Halbert and Plaintiff Skelton without their prior express consent.

## CLASS ALLEGATIONS

41. Plaintiffs jointly bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and two Classes defined as follows:

> **Cell Phone Class**: All individuals in the United States to whom Defendant (1) placed a telephone call to his or her cellular telephone; (2) that was made utilizing an automatic telephone dialing system; (3) which related to Defendant's products or services; and (4) Defendant does not have a record of consent to place telephone calls to his or her cellular telephone number.

> **RoboCall Class**: All individuals in the United States to whom Defendant (1) placed a telephone call that featured an artificial or pre-recorded voice; (2) which related to Defendant's product or services; and (4) he or she never consented to receive robocalls from Defendant at that telephone number.

Plaintiffs Halbert and Skelton bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and a Class defined as follows:

> **Opt-Out Class:** All individuals in the United States to whom Defendant (1) placed a telephone call to his or her cellular telephone; (2) that was made utilizing an automatic telephone dialing system; (3) which related to Defendant's products or services; (4) and, following such calls, he or she made a request to Defendant that he or she no longer receive telephone calls from Defendant; and thereafter, (5) Defendant placed additional telephone calls to his or her cellular telephone.

Excluded from the Classes are 1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, 4) the legal representatives, successors, or assigns of any such excluded person; and 5) Plaintiff's counsel and Defendant's counsel.

42. **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to thousands of consumers who fall into the definitions of the Classes. Class members can be identified through Defendant's records.

43. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the

Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

44. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes are subject to common proof and answerable for the entirety of the Classes within a single stroke include, but are not necessarily limited to, the following:

   (a) whether Defendant's calls violated the TCPA;

   (b) whether the equipment Defendant used to make telephone calls to members of the Cell Phone and Opt-Out Class was an automatic telephone dialing system as contemplated by the TCPA;

   (c) whether Defendant systematically made telephone calls to members of the Classes who did not previously provide Defendant with their prior express consent to receive such telephone calls;

   (d) whether Defendant systematically made telephone calls to members of the Opt-Out Class after specific requests from such Class Members to no longer make such calls;

   (e) whether Defendant systematically made telephone calls to members of the Robocall Class that featured an artificial or pre-recorded voice; and

   (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Superiority & Manageability**: This case is also appropriate for class certification as class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by

the individual members of the Classes will likely be relatively small, especially given the burden and expense required for individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## COUNT I

**Violation of the TCPA, 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiffs, the Cell Phone Class, and the Opt-Out Class)**

47. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

48. Defendant made, or directed to be made, unsolicited telephone calls to cellular telephone numbers belonging to Plaintiffs and other members of the Cell Phone Class and Opt-Out Class without their prior express consent to receive such calls.

49. Defendant and/or its agents made the telephone calls using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

50. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Cell Phone Class and Opt-Out Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

51. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiffs, the Cell Phone Class, and Opt-Out Class members' cellular telephones without their

prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

52. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Cell Phone Class and Opt-Out Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

53. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Cell Phone Class and Opt-Out Class.

### COUNT II

**Violation of the TCPA, 47 U.S.C. § 227 *et seq.*
(On behalf of Plaintiffs and the Robocall Class)**

54. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

55. Defendant and/or its agents made unsolicited telephone calls to telephone numbers belonging to Plaintiffs and the other members of the Robocall Class without their prior express consent.

56. Defendant and/or its agents made unsolicited telephone calls to telephone numbers belonging to Plaintiffs and the other members of the Robocall Class using a prerecorded or artificial voice, more commonly known as a "robocall."

57. Defendant's telephone calls were made to the telephones of Plaintiffs and other members of the Robocall Class without obtaining their prior express consent to make the calls.

58. By making, or having made on their behalf, unsolicited robocalls utilizing an artificial or prerecorded voice to Plaintiffs' and the Robocall Class's telephones without prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B). As a result of Defendant's illegal conduct, Plaintiffs and the other members of the Robocall Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each

violation of the Act.

59.    Defendant's misconduct was willful and knowing and done in reckless and/or deliberate disregard for the rights of the Class Members and, as such, in accordance with section 227(b)(3)(C), the amount of statutory damages recoverable by Plaintiffs and the other members of the Robocall Class should be trebled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Robert Jordan, Sean Halbert, and Dana Skelton individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiffs Robert Jordan, Sean Halbert, and Dana Skelton as representatives of the Classes, and appointing their counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

**ROBERT JORDAN**, **SEAN HALBERT**, and **DANA SKELTON** individually and on behalf of classes of similarly situated individuals,

Dated: February 21, 2014    By:  /s/ Mark Eisen  
                                                   One of Plaintiffs' Attorneys

Mark Eisen (SBN - 289009)  
meisen@edelson.com  
EDELSON PC  
555 West Fifth Street, 31st Floor  
Los Angeles, California 90013  
Tel: 213.533.4100  
Fax: 213.947.4251

Steven L. Woodrow*
swoodrow@edelson.com
Megan Lindsey*
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

Jay Edelson*
jedelson@edelson.com
Alicia Hwang*
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: 312.589.6380
Fax: 312.589.6378

Stefan Coleman, Esq.*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946

* *Pro hac vice* admission to be filed