1  Mark Eisen (SBN - 289009)
   meisen@edelson.com
2  EDELSON PC
   555 West Fifth Street, 31st Floor
3  Los Angeles, California 90013
   Tel: 213.533.4100
4  Fax: 213.947.4251

5  [Additional counsel appearing on signature page]

6  *Attorneys for Plaintiffs and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT JORDAN, SEAN HALBERT, DANA SKELTON, and VANESSA RUGGLES, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company,<br><br>*Defendant*. | Case No. 3:14-cv-00787-WHO<br><br>**CLASS ACTION**<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227** *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs Robert Jordan, Sean Halbert, Dana Skelton, and Vanessa Ruggles bring this class action complaint against Defendant Nationstar Mortgage LLC to stop Defendant's practice of making unsolicited debt collection and other phone calls to the cellular and landline telephones of consumers nationwide without consent and with the use of an automatic telephone dialing system and/or pre-recorded voice in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and to obtain redress for all persons injured by its conduct. Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1. Defendant Nationstar Mortgage is mortgage lender and servicer.

2. In the normal course of its business, Defendant has repeatedly made unsolicited telephone calls to Plaintiffs' and the other putative Class members' cellular and landline telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

3. By making the telephone calls at issue in this Complaint, Defendant has caused Plaintiffs and the members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited and harassing telephone calls, the monies paid to their wireless and landline carriers for the receipt of such telephone calls, the invasion of their privacy, and the violation of their statutory right to be free from such calls.

4. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. Defendant made these calls despite the fact that neither Plaintiffs nor the other members of the putative Class ever provided their telephone numbers to Defendant, or any other entity, for any purpose related to their mortgages, they never provided Defendant consent to be called on the specific telephone numbers Defendant actually called, and they never consented to be called with an automatic telephone dialing system or a pre-recorded voice.

5. In response to Defendant's unlawful conduct, Plaintiffs bring the instant lawsuit

seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities and an award of statutory damages to the members of four Classes under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6. Plaintiff Robert Jordan is a natural person and citizen of the State of California.

7. Plaintiff Sean Halbert is a natural person and citizen of the State of California.

8. Plaintiff Dana Skelton is a natural person and citizen of the State of California.

9. Plaintiff Vanessa Ruggles is a natural person and citizen of the State of California.

10. Defendant Nationstar Mortgage LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 350 Highland Drive, Lewisville, Texas 75067. Defendant Nationstar Mortgage is also registered to do business with the California Secretary of State (entity number 200109410005). Nationstar Mortgage does business throughout the United States, the State of California, and in this District.

**JURISDICTION AND VENUE**

11. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute designed to protect consumer privacy with respect to their cellular and residential landline telephone numbers and accounts.

12. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District, directs telephone calls here, solicits customers here, and enters into consumer and business contracts here. Additionally, Plaintiff Jordan resides in this District and received phone calls from Defendant in this District.

**COMMON FACTUAL ALLEGATIONS**

13. Nationstar is a "non-bank residential mortgage servicer with a range of services across the residential mortgage product spectrum." In general, a mortgage servicer is a third-party that is hired by an investor or owner of a loan to perform the mortgage servicing function with respect to a loan or group of loans (called a portfolio). Mortgage servicers send out bills, collect

payments, allocate the monies collected in accordance with the servicing agreement, calculate escrow, and, in certain circumstances, engage in loss mitigation efforts and foreclosure and foreclosure alternative.

14. The TCPA was enacted to prevent harassing phone calls from intruding upon the seclusion and privacy of every-day Americans who happen to own a phone. In providing its services, however, Nationstar essentially ignores the TCPA outright. That is, rather than implement protocols designed to ensure TCPA compliance, Nationstar has engaged in the widespread practice of calling consumers' cellular and landline telephones without the called parties' prior express consent.

15. Defendant placed and continues to place repeated phone calls to consumers who never provided the number called to Defendant or any third party associated with their respective mortgages. Instead, Defendant acquires phone numbers through various means such as "skip tracing," "number trapping," and other means without the consent of the consumers it calls.

16. Defendant's calls are made for the purpose of collecting alleged debts, to "remind" consumers to pay their mortgage, and for potentially other, non-debt collection reasons.

17. Defendant's calls often come on a daily basis—often multiple times per day.

18. Defendant's calls to cellular and residential landline phones also feature artificial or pre-recorded messages instead of live operators.

19. Making Defendant's calls all the more problematic, the pre-recorded messages do not provide an option to stop the calls. To speak with a live operator and request that the calls stop, a consumer must provide personal identifying information such as a social security number.

20. This barrier is particularly problematic because Defendant places unwanted telephone calls to consumers who have *no debt or mortgage with or serviced by Defendant whatsoever*. Instead, calls are repeatedly placed to the wrong consumer when Defendant is looking for an entirely different person.

21. Even when consumers are called and connected to a live operator—and even when they make explicit requests to Defendant to stop receiving telephone calls from Defendant—the calls continue in direct contradiction to those requests.

22. In making the calls at issue in this Complaint, Defendant, and/or its agents utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to generate and store random numbers, or receive and store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention. The automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers or recordings and disconnecting the rest of the calls (or placing them on hold). Accordingly, consumers receiving calls from Defendant and/or its agents are frequently confronted with dead air or the sound of the call being disconnected (otherwise known as an "abandoned call").

23. Defendant was and is aware that the above described telephone calls were and are being made to consumers without their prior express consent to receive them.

**FACTS SPECIFIC TO PLAINTIFF JORDAN**

24. Plaintiff Jordan does not have a mortgage held by, serviced by, or in any other way associated with Defendant Nationstar. In fact, Plaintiff Jordan does not have any home loans at all.

25. Nevertheless, Defendant has placed numerous calls to Plaintiff Jordan's telephone since at least July 2013, often weekly, from the phone number (888) 811-5279.

26. The telephone number (888) 811-5279 belongs to and connects directly to Defendant Nationstar.

27. The calls were placed to Jordan's VOIP number, with the last four digits ending in 5451, which he had set up to automatically forward to his cell phone, with the last four digits ending in 8484.

28. When Plaintiff Jordan answered these calls he heard an artificial or pre-recorded voice identifying the caller as Nationstar and requesting that he call Nationstar back. However, when Plaintiff Jordan called Nationstar back to stop the calls, he was greeted with another pre-recorded message directing him to input his telephone number and Social Security number to identify his loan. Because Plaintiff Jordan does not have a loan with Defendant, he was unable to get past these requests. Additionally, pressing "0" only brought him back to the main menu. As

such, despite Plaintiff Jordan's best efforts he could not stop the calls and they continued on a repeat basis.

29.     In a final effort to stop the calls, Plaintiff Jordan has put a block on his phone line for the number (888) 811-5279.

30.     Plaintiff Jordan did not consent to receive calls of any kind from Defendant.

31.     Defendant was and is aware that the above described telephone calls were and are being made to Plaintiff Jordan's telephone number without his prior express consent to receive them.

32.     It is unclear what the purpose of the Defendant's calls to Jordan was as Jordan neither has a mortgage with Nationstar nor owes any debt to Nationstar.

## FACTS SPECIFIC TO PLAINTIFFS HALBERT AND SKELTON

33.     Plaintiffs Halbert and Skelton are married. Their mortgage is presently held by Defendant Nationstar.

34.     Since their mortgage was transferred to Defendant from their prior servicer, Halbert and Skelton have always timely made their payments within the allotted grace period.

35.     Yet, shortly after the mortgage was transferred to Nationstar in March 2012, and having made no payments outside of Defendant's grace period, Plaintiffs Halbert and Skelton each began receiving numerous phone calls on their cellular telephones aggressively "reminding" them to make payments, even though the payments were not yet beyond the grace period. Many of these calls featured an artificial or pre-recorded voice. The calls came from, at the very least, the phone number (877) 698-9400. The telephone number (877) 698-9400 belongs to Defendant Nationstar.

36.     If Plaintiffs Halbert and Skelton did not answer the calls, Defendant would leave a voicemail, often with a pre-recorded voice, stating "This is Nationstar calling regarding your account, it's urgent you contact us in the next 24 hours."

37.     Plaintiffs Halbert and Skelton placed a telephone call to Defendant in March 2012 and requested to be taken off the call list because their account was in good standing and they always paid within the grace period. The customer service representative verified that Defendant had received Plaintiffs Halbert and Skelton's payment at the same day each month and that the

payments had not been late. The customer service representative ensured Halbert and Skelton that they would not be called again.

38. Despite the representative's assurances, in April 2012 the calls resumed from Nationstar.

39. Because Defendant would not stop making calls, and because Plaintiffs Halbert and Skelton found the calls to be a personal invasion of privacy and harassing, Plaintiff Skelton submitted a formal complaint to the Better Business Bureau ("BBB") about the calls indicating, "We would like the illegal collection calls to stop." The BBB forwarded the complaint to Defendant Nationstar.

40. Shortly thereafter, Plaintiffs received a letter from Defendant Nationstar indicating that it had received the BBB complaint. Defendant's letter stated "We received notification from the Better Business Bureau on April 11, 2012 regarding your request to cease and desist collection calls on the above mentioned account. Please accept our apology if you have experienced any inconvenience in this matter. Your account has been coded to cease the collection calls."

41. While the calls did cease for a time, Defendant yet again began making calls to both Plaintiff Halbert and Plaintiff Skelton approximately six months later.

42. Plaintiff Halbert answered several of these post-opt out calls that were again made with a pre-recorded voice and, after being connected to a live operator, explicitly requested that the calls to him and wife cease. This, however, again failed to stop the calls.

43. Since that time, the calls have continued monthly up to and including the present.

44. Neither Halbert nor Skelton ever provided their cellphone numbers to Nationstar or otherwise consented to receive calls from Nationstar. Further, any putative consent was expressly revoked.

45. Defendant was and is aware that it was making the relevant calls to Plaintiff Halbert and Plaintiff Skelton without their prior express consent with the use of an ATDS and/or a pre-recorded voice.

46. Plaintiff Halbert's cellphone ends in 9048, and Plaintiff Skelton's cellphone ends in 3225.

**FACTS SPECIFIC TO PLAINTIFF RUGGLES**

47. Plaintiff Ruggles has had a cellular telephone since at least 2001. Plaintiff has had the same cellular telephone number for at least ten years. Plaintiff's current carrier is Sprint.

48. In or about early November 2013, Plaintiff began receiving unsolicited telephone calls from Nationstar. Sometimes Plaintiff did not answer these calls, and other times she answered the phone. On some of the calls that Plaintiff answered, there was a period of silence before a live person spoke, which indicates that a machine had dialed her number and then waited for her to answer before bringing a representative on the line. For other calls, when Plaintiff Ruggles answered she heard a prerecorded or artificial voice identifying the caller as Nationstar

49. Initially, Nationstar would ask for Ruggles by her name, Vanessa Ruggles. On other subsequent calls, however, Nationstar would ask to speak with Randall Fisher, a person unassociated with Ruggles whom Ruggles does not know.

50. Like Plaintiff Jordan, Defendant called Ruggles repeatedly from phone number (888) 811-5279. When Ruggles answered the phone, she repeatedly told Nationstar not to call her again. Ruggles also called Defendant at (888) 811-5279 and requested that the calls stop. During these discussions, a Nationstar employee or representative informed Ruggles that it would take thirty days to process her request to stop the calls. Despite her repeated pleas, Nationstar continued to call Plaintiff a total of approximately twenty-three (23) times between November 2013 and December 4, 2013. During another one of the calls in or around November 2013, a Nationstar representative told Ruggles that Nationstar could keep calling because the calls were courtesy calls, as opposed to solicitations.

51. These calls were annoying, harassing, and distressing and became an ordeal for Ruggles. The calls disrupted her at work and at home and sometimes occurred several times in the same day. The calls from Defendant intruded upon Ruggles' solitude and privacy and interfered with her workday.

52. Plaintiff Ruggles is not a customer of Nationstar. Ruggles never provided her cellular phone number to Nationstar. Plaintiff does not have any business relationship with

Nationstar and never has.

53. These unsolicited calls placed to Plaintiff's cellular telephone were placed via an ATDS as defined by Congress as set forth in 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A)(iii).

54. The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1)(iii).

55. These telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

56. Plaintiffs did not provide Defendant or its agents prior express consent to receive unsolicited telephone calls pursuant to 47 U.S.C. § 227 (b)(1)(B).

57. These telephone calls by Defendant or its agents violated 47 U.S.C. § 227(b)(1).

## CLASS ALLEGATIONS

58. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and four Classes defined as follows:

> **No Mortgage Cell Phone Class**: All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or a prerecorded or artificial voice; (3) which related to Defendant's products or services; (4) where Defendant does not have a record of consent to place telephone calls to his or her cellular telephone number; and (5) who did not have a mortgage loan serviced or owned by Nationstar when the call was made.

> **Mortgage Cell Phone Class**: All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or by a prerecorded or artificial voice; (3) which related to Defendant's products or services; (4) where Defendant does not have a record of consent to place telephone calls to his or her cellular telephone number; and (5) who had a mortgage loan serviced or owned by Nationstar when the call was made.

> **Opt-Out Class:** All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her cellular telephone from February 21, 2010 to the present; (2) that was made utilizing an automatic telephone dialing system and / or a prerecorded or artificial voice; (3) which related to Defendant's products or services; (4) and, following such calls, he or she made a request to Defendant that he or she no longer receive telephone calls from Defendant; and (5)

thereafter Defendant placed additional telephone calls to his or her cellular telephone.

**Landline Class**: All individuals in the United States to whom Defendant (1) placed a non-emergency telephone call to his or her residential landline phone from February 21, 2010 to the present; (2) that was made utilizing a prerecorded or artificial voice; (3) which related to Defendant's product or services; (4) where Defendant does not have a record of consent to place telephone calls to his or her landline telephone number, and (5) who did not have a mortgage loan serviced or owned by Nationstar when the call was made.

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person; and (5) Plaintiffs' counsel and Defendant's counsel.

59.     **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to thousands of consumers who fall into the definitions of the Classes. Class members can be identified through Defendant's records.

60.     **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs are members of the Classes and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls. Specifically, Plaintiffs Halbert, Skelton, and Ruggles are members and putative representatives of the Opt Out Class. Plaintiff Ruggles is a member and putative representative of the No Mortgage Cellphone Class. Plaintiffs Halbert and Skelton are members and putative representatives of the Mortgage Cellphone Class. Plaintiff Jordan is a member and putative representative of the Landline Class.

61.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to any of the Plaintiffs.

62. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes as they are the issues at the heart of each claim. Common questions for the Classes are subject to common proof and answerable for the entirety of the Classes within a single stroke include, but are not necessarily limited to, the following:

    (a) whether Defendant's calls violated the TCPA;

    (b) whether the equipment Defendant used to make telephone calls to members of the Classes was an automatic telephone dialing system or pre-recorded voice as contemplated by the TCPA;

    (c) whether Defendant systematically made telephone calls to members of the Classes who did not previously provide Defendant with their prior express consent to receive such telephone calls;

    (d) whether Defendant systematically made telephone calls to members of the Opt-Out Class after receiving requests from such Class Members that Nationstar cease placing such calls;

    (e) whether Defendant systematically made telephone calls to members of the No Mortgage Cell Phone Class, the Mortgage Cell Phone Class, and the Opt Out Class to their cellular phones;

    (f) whether Defendant made calls to the residential landline phones of members of the Landline Class that featured an artificial or pre-recorded voice;

    (g) whether Defendant's calls to residential landline phones of members of the Landline Class are exempt from the TCPA as debt collection calls;

    (h) whether Defendant made its calls for emergency purposes; and

    (i) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

63. **Superiority & Manageability**: This case is also appropriate for class certification

as class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense required for individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiffs Ruggles and the No Mortgage Cell Phone Class)**

64. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

65. Defendant made, or directed to be made, unsolicited telephone calls to cellular telephone numbers belonging to Plaintiff Ruggles and other members of the No Mortgage Cell Phone Class without their prior express consent to receive such calls. In fact, like Plaintiff, none of the members of the No Mortgage Cell Phone Class had a mortgage loan serviced or owned by Nationstar.

66. Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse* and/or (2) using a prerecorded or artificial voice.

67. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the No Mortgage Cell Phone Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and

telephone system, among potentially other brands of automatic telephone dialing systems.

68. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiff and the No Mortgage Cell Phone Class members' cellular telephones without their prior express consent, and by utilizing an ATDS or pre-recorded voice to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

69. As a result of Defendant's unlawful conduct, Plaintiff and the members of the No Mortgage Cell Phone Class have suffered invasions of privacy and actual damages, including in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

70. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Mortgage Cell Phone Class.

## COUNT II
### Violation of the TCPA, 47 U.S.C. § 227 *et seq.*
### (On behalf of Plaintiffs Halbert and Skelton and the Mortgage Cell Phone Class)

71. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

72. Defendant made, or directed to be made, unsolicited telephone calls to cellular telephone numbers belonging to Plaintiffs and other members of the Mortgage Cell Phone Class without their prior express consent to receive such calls. Although members of the Relationship Cell Phone Class had mortgages held or serviced by Nationstar at the time the calls were placed, such consumers had never provided Nationstar with consent to be called using either an ATDS or with a pre-recorded voice.

73. Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse* and/or (2) using a prerecorded or artificial voice.

74. Defendant utilized equipment that made, or had made on its behalf, the telephone

calls to Plaintiffs and other members of the Mortgage Cell Phone Class simultaneously and without human intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

75. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiffs and the Mortgage Cell Phone Class members' cellular telephones without their prior express consent, and by utilizing an ATDS or pre-recorded voice to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

76. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Mortgage Cell Phone Class have suffered invasions of privacy and actual damages, including in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

77. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Mortgage Cell Phone Class.

**COUNT III**
**Violation of the TCPA, 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiffs Skelton, Halbert, and Ruggles and the Opt-Out Class)**

78. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

79. Defendant made, or directed to be made, unsolicited telephone calls to cellular telephone numbers belonging to Plaintiffs and other members of the Opt-Out Class without their prior express consent to receive such calls.

80. Defendant and/or its agents made the telephone calls (1) using equipment that had the capacity to store, generate or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse* and/or (2) using a prerecorded or artificial voice.

81. Defendant utilized equipment that made, or had made on its behalf, the telephone calls to Plaintiffs and other members of the Opt-Out Class simultaneously and without human

intervention. Specifically, Defendant utilizes an Avaya predictive dialer and telephone system, among potentially other brands of automatic telephone dialing systems.

82. Plaintiffs and the members of the Opt-Out Class requested that Defendant cease calling them. However, the Defendant continued to call them following receipt of their requests that Defendant cease placing such calls. Further, Nationstar failed to implement adequate safeguards or internal controls designed to prevent or minimize its re-calling of consumers who have requested that the calls cease.

83. By making, or having made on its behalf, the unsolicited telephone calls to Plaintiffs and Opt-Out Class members' cellular telephones after the Plaintiffs and Opt-Out Class members revoked any consent or requested that Defendant cease placing such calls, by calling Plaintiffs and the Opt-Out Class members without their consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

84. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Opt-Out Class suffered invasions of privacy and actual damages, including damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA plus injunctive relief to stop the calls.

85. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Opt-Out Class.

**COUNT IV**
**Violation of the TCPA, 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff Jordan and the Landline Class)**

86. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

87. Defendant and/or its agents made unsolicited telephone calls to telephone numbers belonging to Plaintiffs' and the other members of the Landline Class's residential landline telephones without their prior express consent.

88. Defendant and/or its agents made such unsolicited telephone calls to residential landline telephone numbers belonging to Plaintiff Jordan and the other members of the Landline Class using a prerecorded or artificial voice, more commonly known as a "robocall."

89. Defendant's telephone calls were made to the landline telephones of Plaintiff and other members of the Landline Class without obtaining their prior express consent to make the calls. In fact, like Plaintiff Jordan, none of the members of the Landline Class had a mortgage loan serviced or owned by Nationstar.

90. By making, or having made on their behalf, unsolicited robocalls utilizing an artificial or prerecorded voice to Plaintiff's and the Landline Class's cellular telephones without prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(B). As a result of Defendant's unlawful conduct, Plaintiff and the other members of the Landline Class suffered invasions of privacy and actual damages, including damages in the form of monies paid to receive unsolicited calls and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the Act plus injunctive relief to stop the calls.

91. Defendant's misconduct was willful and knowing and done in reckless and/or deliberate disregard for the rights of the Class Members and, as such, in accordance with section 227(b)(3)(C), the amount of statutory damages recoverable by Plaintiff and the other members of the Landline Class should be trebled.

92. Though the purpose of the calls placed to the members of the Landline Class's landline phones is unclear, on information and belief such calls were not for debt collection purposes as the members of the Landline Class did not have any debts held, owned, or serviced by Nationstar.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Robert Jordan, Sean Halbert, Dana Skelton, and Vanessa Ruggles, individually and on behalf of the Classes, pray for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Vanessa Ruggles as representative of the No Mortgage Cell Phone Class, Plaintiffs Sean Halbert and Dana Skelton as representatives of the Mortgage Cell Phone Class, Plaintiffs Vanessa Ruggles, Sean

1  Halbert and Dana Skelton as representatives of the Opt-Out Class, and Plaintiff Robert Jordan as
2  representative of the Landline Class, and appointing their counsel as Class Counsel;
3      2.    An award of actual and statutory damages;
4      3.    Treble statutory damages for any willful or knowing conduct;
5      4.    An injunction requiring Defendant to cease all unsolicited telephone calling
6  activities and otherwise protecting the interests of the Classes;
7      5.    An award of reasonable attorneys' fees and costs; and
8      6.    Such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

**ROBERT JORDAN**, **SEAN HALBERT**, and **DANA SKELTON, and VANESSA RUGGLES** individually and on behalf of classes of similarly situated individuals,

Dated: June 23, 2014

By: /s/ Steven L. Woodrow
One of Plaintiffs' Attorneys

Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Steven L. Woodrow (Admitted Pro Hac Vice)
swoodrow@edelson.com
Megan Lindsey (Admitted Pro Hac Vice)
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

Jay Edelson*
jedelson@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: 312.589.6380
Fax: 312.589.6378

Stefan Coleman, Esq.*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946

* *Pro hac vice* admission to be filed

Michael P. Sousa, SBN 229416
sousam@sbcglobal.net
LAW OFFICES OF MICHAEL P. SOUSA, APC
3232 Governor Dr., Suite A
San Diego, CA 92122
Tel: 858.453.6122, ext. 15
Fax: 858.453.2155

Matthew G. English, SBN 204869
mgelaw@gmail.com
LAW OFFICES OF MATTHEW G. ENGLISH
941 Orange Ave. #344
Coronado, CA 92118
Tel: 619.944.8568

Douglas J. Campion, SBN: 75381
doug@djcampion.com
Law Offices of Douglas J. Campion, APC
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Tel: (619) 299-2901
Fax: (619) 858-0034

## CERTIFICATE OF SERVICE

I, Steven L. Woodrow, an attorney, hereby certify that I served *Consolidated Class Action Complaint for Damages and Injunctive Relief Pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.* by causing a true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 23rd day of June 2014.

/s/   Steven L. Woodrow