Abraham J. Colman (SBN 146933)
acolman@reedsmith.com
Felicia Y. Yu (SBN 193316)
fyu@reedsmith.com
Raymond Y. Kim (SBN 251210)
rkim@reedsmith.com
Jack J. Gindi (SBN 293739)
Email: jgindi@reedsmith.com
Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA  90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Attorneys for Defendant
Nationstar Mortgage, LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JORDAN, SEAN HALBERT and DANA SKELTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 3:14-cv-00787-WHO<br><br>**DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE**<br><br>Date:     Wednesday, August 20, 2014<br>Time:     2:00 p.m.<br>Dept.:     Courtroom 2 – 17th Floor<br><br>Complaint Filed:     February 21, 2014<br>Consolidated Amended Complaint Filed: June 23, 2014 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Wednesday, August 20, 2014 at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 2, 17th Floor of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Nationstar Mortgage, LLC ("Nationstar"), will and hereby does move this Court for a stay of this action pursuant to the primary jurisdiction doctrine on the grounds that the Federal Communications Commission ("FCC") has primary jurisdiction to decide three critical legal issues that lie at the heart of this case: (1) whether dialing equipment that lacks the *current* capacity for random or sequential dialing constitutes an "automatic telephone dialing system" as defined by the TCPA; (2) whether TCPA liability "arises when a cell phone number is reassigned from someone who gave consent to someone who did not without notice to the caller"; and (3) whether the TCPA applies to non-telemarketing calling activity, such as debt collection calls.

This motion is based on this Notice of Motion and Memorandum of Points and Authorities, all pleadings and papers on file in this action, and on such other matters as may be presented to the Court at the time of the hearing.

DATED:  July 10, 2014          REED SMITH LLP


By: */s/ Raymond Y. Kim*
     Abraham J. Colman
     Felicia Y. Yu
     Raymond Y. Kim
     Jack J. Gindi
     Attorneys for Defendant
     Nationstar Mortgage, LLC

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE

**Table of Contents**

| | Page |
|---|---|
| TABLE OF AUTHORITIES | 2 |
| I. INTRODUCTION | 4 |
| II. BACKGROUND | 5 |
|     A. Factual Background | 5 |
|     B. The FCC Is Currently Considering the "Capacity" Issue | 6 |
|         1. *In re Communication Innovators* | 6 |
|         2. *In re YouMail* | 8 |
|         3. *In re PACE* | 8 |
| III. LEGAL STANDARD | 9 |
| IV. ARGUMENT | 9 |
|     A. This Action Should be Stayed Because the FCC Has Primary Jurisdiction to Resolve the "Capacity" Issue | 10 |
|         1. The Factors Traditionally Considered in Determining Whether to Apply Primary Jurisdiction Weigh in Favor Of Granting a Stay | 10 |
|         2. Recently Four Courts, Including Two in this Circuit, Stayed TCPA Lawsuits Based on the FCC Petitions Addressing "Capacity" | 12 |
|         3. A Stay is Particularly Appropriate in this Case Because the FCC is Actively Considering the "Capacity" Issue and a Ruling is Imminent | 14 |
|     B. This Action Should be Stayed Because the FCC has Primary Jurisdiction to Determine Whether a Caller is Liable Under the TCPA for Calling an "Unintended Recipient" | 15 |
|     C. This Action Should Be Stayed Because the FCC has Primary Jurisdiction to Determine Whether the TCPA Applies to Debt Collection Calls. | 17 |
| V. CONCLUSION | 18 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

US_ACTIVE-117614231.8-JJGINDI

DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY
JURISDICTION DOCTRINE

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 ................................................................................ 9

*Alea London Ltd. v. Am. Home Servs., Inc.*,
  638 F.3d 768 .............................................................................. 12

*Auer v. Robbins*,
  519 U.S. 452 (1997)................................................................... 10

*Barrera v. Comcast Holdings Corp.*,
  14-CV-00343-TEH, 2014 WL 1942829  (N.D. Cal. May 12, 2014).............................. 15

*Charvat v. EchoStar Satellite, LLC*,
  630 F.3d 459 (6th Cir. 2010) ............................................... 10, 11

*Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837 (1984)................................................................... 10

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) .................................................... 9

*Davel Commc'ns, Inc. v. Qwest Corp.*,
  460 F.3d 1075 (9th Cir. 2006) .................................................... 9

*Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.*,
  386 F. Supp. 2d 144 (W.D.N.Y. 2005) .................................... 14

*Glauser v. Twilio, Inc.*,
  2012 WL 259426 (N.D. Cal. Jan. 27, 2012) ............................ 14

*Gordon v. Church & Dwight Co.*,
  C 09-5585 PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) ...................... 14

*Gusman v. Comcast Corp.*,
   2014 WL 2115472 (S.D. Cal. 2014) ........................................ 16

*Heinrichs v. Wells Fargo Bank, N.A.*,
  2014 WL 2142457 (N.D. Cal. Apr. 15, 2014) ..................... 16, 17

*Higgenbotham v. Diversified Consultants, Inc.*,
  13-2624-JTM, 2014 WL 1930885 (D. Kan. May 14, 2014) .............. 13

*Higgingbotham v. Hollins*,
  2014 WL 2865730 (D. Kan. June 24, 2014)....................... 16, 17

*Hunt v. 21st Mortg. Corp.*,
  2013 WL 5230061 (N.D. Ala. Sept. 17, 2013) .......................... 11

*Hurrle v. Real Time Resolutions, Inc.*,
  2014 WL 670639 ................................................................. 13, 17

*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*,
  18 FCC Rcd. 14014  (2003)........................................................ 11

*Matlock v. United Healthcare Servs., Inc*,
  2014 WL 1155541 ................................................................ 14, 16

*Mendoza v. UnitedHealth Grp. Inc.*,
  2014 WL 722031 ........................................................................ 12

*Passero v. Diversified Consultants, Inc.*,
  2014 WL 2257185 ......................................................... 13, 14, 17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 2 –

DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY
JURISDICTION DOCTRINE

*S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm,'n,*
    744 F.2d 1107(5th Cir. 1984) ............................................................................ 11, 12

*United States v. W. Pac. R. Co.,*
    352 U.S. 59 (1956).......................................................................................... 9, 12

**Statutes**

47 U.S.C. § 227........................................................................................................ 4

47 U.S.C. § 227(a)(1)(A), (B).................................................................................. 5, 6

47 U.S.C. § 227(b)(2) ............................................................................................. 10

47 U.S.C. § 227(f)(3) .............................................................................................. 10

47 U.S.C. §§ 227(b)(2)(B), 227(b)(2)(C) ............................................................... 10

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 3 –

# I.     INTRODUCTION

Plaintiffs Robert Jordan, Sean Halbert, Dana Skelton, and Vanessa Ruggles' ("Plaintiffs") Consolidated Class Action Complaint ("FAC") should be stayed because the Federal Communications Commission ("FCC") has primary jurisdiction to decide three critical legal issues that lie at the heart of this case: (1) whether dialing equipment that lacks the *current* capacity for random or sequential dialing constitutes an "automatic telephone dialing system" as defined by the TCPA; (2) whether TCPA liability "arises when a cell phone number is reassigned from someone who gave consent to someone who did not without notice to the caller"; and (3) whether the TCPA applies to non-telemarketing calling activity, such as debt collection calls.

In the FAC, Plaintiffs allege that defendant Nationstar Mortgage, LLC ("Nationstar") violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by placing debt collection calls using an "automatic telephone dialing system" ("ATDS") to Plaintiffs' cellular telephones without their prior express consent.  At the time that Nationstar allegedly called Plaintiffs' cellular phones, it used dialing equipment that lacked the *current* capacity to randomly or sequentially dial calls.  There has been significant debate regarding whether dialing equipment that lacks the *current* capacity for random or sequential dialing constitutes an ATDS, and there are presently three petitions pending before the FCC requesting a ruling on the "capacity" issue.  The FCC, which is the federal agency authorized by Congress to interpret and implement the TCPA, possesses the expertise to resolve this issue and has declared that a ruling is forthcoming.  As such, within the last several months, four courts, including the Northern District of California, issued stays based on the "capacity" petitions.[1]  Accordingly, Nationstar respectfully requests that this Court stay this action to allow the FCC to resolve the "capacity" issue.

In addition, the FCC has primary jurisdiction to determine "whether liability under the TCPA attaches for non-telemarketing calls placed to reassigned or wrong wireless telephone numbers."[2]  In

---

[1] *See Mendoza v. UnitedHealth Grp. Inc.*, 13-1553 PJH, 2014 WL 722031 (N.D. Cal. Jan. 6, 2014) (Hon. Phyllis J. Hamilton); *Hurrle v. Real Time Resolutions, Inc.*, Case No. C13-5765, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014); *Higgenbotham v. Diversified Consultants, Inc.*, 13-2624-JTM, 2014 WL 1930885 (D. Kan. May 14, 2014); *Passero v. Diversified Consultants, Inc.*, 2014 WL 2257185, at *3 (W.D.N.Y. May 28, 2014).

[2] *Barrera v. Comcast Holdings Corp.*, 2014 WL 1942829 at *1 (N.D. Cal. May 12, 2014) (Hon. Thelton E. Henderson) ("[A] stay of this case would promote uniformity in the administration of the TCPA because a central issue presented in this case—whether liability under the TCPA attaches for non-telemarketing calls placed to reassigned or wrong wireless

DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  fact, two judges in the Northern District of California, Judge Thelton E. Henderson and Judge

2  William Alsup, have stayed similar TCPA actions based on this issue. Here, because Jordan and

3  Ruggles were both unintended recipients of Nationstar's alleged calls, the FCC's resolution of this

4  issue will directly govern the outcome of this putative class action lawsuit.

5       Furthermore, the FCC has primary jurisdiction to resolve a third issue that is central to

6  resolution of this case: whether the TCPA applies to non-telemarketing calling activity, such as debt

7  collection calls.[3] Because Plaintiffs' putative class action is predicated on the allegation that

8  Nationstar made debt collection calls to their cellular telephones, the Court should await the FCC's

9  determination of this issue also.

10       Permitting to the FCC to determine these issues allows the federal regulatory agency

11  expressly empowered by Congress to apply its expertise and provide clarity. Moreover, waiting for

12  the FCC's ruling ensures national uniformity on issues which are currently affecting numerous

13  companies facing similar TCPA lawsuits. Accordingly, Nationstar respectfully requests that this

14  matter be stayed until the FCC proceedings are resolved.

15                 **II.  BACKGROUND**

16      **A.  Factual Background**

17       Plaintiffs allege that Nationstar made numerous calls to Plaintiffs' cell phones in order to

18  collect on mortgage loans. Consolidated Class Action Complaint ("FAC"), ¶¶ 13, 16, 35, 50.

19  Plaintiffs further allege, without pleading any supporting factual allegations, that Nationstar placed

20  these calls using an ATDS as defined by the TCPA. *Id.* ¶ 22.

21       At the time the alleged calls were initiated to Plaintiffs, the dialing equipment used by

22  Nationstar lacked the *current* capacity to "store or produce numbers to be called, using a random or

23  sequential number generator . . . and to dial such numbers," as required to constitute an ATDS. *See*

24  Declaration of Kent Lemon ("Lemon Decl."), ¶¶ 2-3; 47 U.S.C. § 227(a)(1)(A), (B). In fact,

25

26  telephone numbers—is already under submission before the FCC in two pending petitions."); *Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 2142457, at *2 (N.D. Cal. Apr. 15, 2014) (Hon. William Alsup) (holding same).

27  [3] *See Hurrle*, 2014 WL 670639 (staying TCPA action pursuant to the primary jurisdiction doctrine because whether non-telemarketing "activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC"); *Higginbotham v. Hollins*, 2014 WL 2865730 (D. Kan. June 24, 2014).

28

1   Nationstar's dialing equipment was only capable of generating calls from a list of known telephone

2   numbers that was downloaded onto its equipment.  *See id.* ¶ 4.

3   **B.      The FCC Is Currently Considering the "Capacity" Issue**

4           Plaintiffs' allegations focus on Section 227(a)(1) of the TCPA.  In order to be liable under

5   this provision, an entity must have made a call to a cellular phone "using an automatic telephone

6   dialing system."  The TCPA defines an ATDS as equipment which has the *capacity—*

7                   (A)     to store or produce telephone numbers to be called, using a random or

8                           sequential number generator; and

9                   (B)     to dial such numbers.

10  47 U.S.C. § 227(a)(1)(A), (B) (emphasis added).  Although central to the definition of an ATDS, the

11  TCPA does not define the term "capacity."  Some courts have applied an expansive reading of the

12  term "capacity," which would include all equipment that could potentially be programmed to

13  perform random or sequential number generation ("*theoretical* capacity").  Other courts have applied

14  a narrow reading of the term "capacity," limiting it to such equipment that -- at the time of use -- was

15  capable of performing random or sequential number generation, without first being technologically

16  altered ("*current* capacity").

17          There are presently three petitions pending before the FCC requesting that the FCC address

18  the interpretation of "capacity."  Because Nationstar's dialing equipment lacks—and lacked—the

19  *current* capacity for random or sequential number generation, this Court must address the very issue

20  that the FCC is presently considering.  This case should be stayed to give the FCC the opportunity to

21  first issue a declaratory ruling addressing the "capacity" issue.

22                  **1.      *In re Communication Innovators***

23          The first Petition for Declaratory Ruling pending before the FCC is titled *In the Matter of*

24  *Communication Innovators' Petition for Declaratory Ruling*, GC Docket No. 02-278 (Jun. 7, 2012)

25  ("CI Petition").  Declaration of Jack Gindi ("Gindi Decl."), Exh. A.  The CI Petition specifically

26  asks the FCC to clarify that "predictive dialers that (1) are not used for telemarketing purposes and

27  (2) do not have the current ability to generate and dial random or sequential numbers, are not

28  'automatic telephone dialing systems' under the TCPA and the Commission's TCPA rules."  *Id.*,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 6 –

Exh. A at 1.

In requesting this ruling, the CI Petition points out that the TCPA does not define "capacity," and urges the FCC to "clarify that the definition of an [ATDS] under the TCPA reflects equipment that has a present capacity, such as having the current ability to generate and dial random or sequential numbers without additional modifications to the equipment." *Id.*, Exh. A at 17.  It argues that the FCC "should not interpret capacity as encompassing any conceivable hardware or software modification to a device that would permit it to generate, store, and dial numbers randomly or in sequence." *Id.*  As the CI Petition notes, interpreting "capacity" broadly to include "any conceivable hardware or software modification" would potentially bring "mobile phones, smart phones, tables, e-readers, and personal computers" within the TCPA's scope, as each can "theoretically be modified . . . to randomly or sequentially generate and dial telephone numbers." *Id.*

The CI Petition was filed on June 7, 2012.  About four months later, the FCC issued a public notice seeking comment on CI's Petition and on six other petitions, most relating to the use of auto-dialing technologies, and all relating to the TCPA.  *See* <u>Gindi Decl.</u>, Exh. B, Federal Communications Commission, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling from Communication Innovators (Oct. 16, 2012).  The deadline for comments was November 15, 2012, and for reply comments, November 30, 2012, more than a year ago.  *Id.*  At that time, numerous consumer and industry groups commented, most of which generally supported CI's Petition.  *See* <u>Gindi Decl.</u>, Exh. C, at 2, 3, 7, 8, 10, 12, 13 and 15 (Reply Comments of Communication Innovators, *In the Matter of Communication Innovators Petition for Declaratory Ruling*, CG Docket No. 02-287 (Nov. 3, 2012)).

Recently, the FCC publicly indicated that a decision regarding the CI Petition is imminent. In September 2013, the FCC released an exchange of correspondence between Congress and the FCC where the FCC stated that "[a] draft order to resolve the [CI] Petition is under consideration by the Commission, and Communication Innovators has met with the staff recently to discuss the matter."  <u>Gindi Decl.</u>, Exh. D.  The FCC further stated, "[w]e take seriously the issues raised in the Petition and the potential impact on consumers, *and expect the Commission to resolve it soon*." *Id.* (emphasis added).  This recent flurry of activity regarding the CI Petition bolsters the assumption

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 7 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  that the FCC will issue directly relevant guidance in the very near future.

2     **2.     *In re YouMail***

3     The second FCC petition addressing the "current capacity" issue was filed by YouMail, Inc.

4  ("YouMail") on April 19, 2013.  Gindi Decl., Exh. E, *In re YouMail's Petition for Expedited*

5  *Declaratory Ruling and Clarification*, GC Docket No. 02-278 (April 19, 2013) (emphasis added)

6  ("YouMail Petition").  Like CI, YouMail specifically asks that "the Commission affirmatively state

7  that only equipment that has a current capacity to store and produce telephone number to be called

8  using a random or sequential number generator" should be considered an ATDS.  On June 25, 2013,

9  the FCC issued a public notice seeking comment on YouMail's Petition.  Gindi Decl., Exh. F, "FCC,

10 Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling

11 from YouMail, Inc. (June 25, 2013).  Comments were accepted through August 2013.  Notably,

12 YouMail's proposed interpretation of the term "capacity" as *current* capacity received "widespread

13 support from the majority of commenters."  Gindi Decl., Exh. G, Reply Comments of YouMail, Inc.,

14 *In the Matter of YouMail Inc.'s Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278

15 (Aug. 9, 2013).

16    **3.     *In re PACE***

17    The third petition addressing the "current capacity" issue was filed by the Professional

18 Association for Customer Engagement ("PACE") on October 18, 2013.  Like the above petitioners,

19 PACE specifically asks the FCC to clarify whether the term "capacity" is limited to a dialing

20 system's capabilities at the time that a call is made as opposed to a theoretical capacity based on

21 equipment design.  *See* Gindi Decl., Exh. H, *In re Professional Association for Customer*

22 *Engagement's Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (October 18,

23 2013) (the "PACE Petition").  On November 19, 2013, the FCC issued a public notice seeking

24 comment on the PACE Petition.  *See* Gindi Decl., Exh. I,  Federal Communications Commission,

25 Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling

26 from PACE (November 19, 2013).  The FCC's deadline for reply comments closed several months

27 ago, on January 4, 2014.

28

### III.    LEGAL STANDARD

The primary jurisdiction doctrine is concerned with protecting the administrative process from judicial interference. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967). The "doctrine 'allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency.'" *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). It "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956).

The Ninth Circuit "traditionally" considers four factors in determining whether to stay a case pursuant to primary jurisdiction: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006). Courts have further noted that application of the primary jurisdiction doctrine is particularly appropriate where a decision of the relevant administrative agency is currently pending and where the issue to be decided is on point with the issue before the court. *See Clark,* 523 F.3d at 1115 (noting, in affirming the district court's exercise of the primary jurisdiction doctrine, that a pending Notice of Proposed Rulemaking "demonstrates that the agency is actively considering" the question presented).

All four factors are satisfied here because Congress gave the FCC jurisdiction to resolve three issues that are central to resolution of this case and the determination of each of these issues requires FCC expertise and ensures national uniformity. Further, with respect to the "capacity" issue, the FCC has publicly indicated that it plans on issuing a ruling in the near future. Accordingly, this case should be stayed pursuant to the primary jurisdiction doctrine.

### IV.    ARGUMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**A.** **This Action Should be Stayed Because the FCC Has Primary Jurisdiction to Resolve the "Capacity" Issue**

    **1.** **The Factors Traditionally Considered in Determining Whether to Apply Primary Jurisdiction Weigh in Favor Of Granting a Stay**

The four factors traditionally considered in determining whether to apply primary jurisdiction weigh in favor of the Court granting a stay of this action. *First*, because Nationstar's dialing equipment lacks the *current* capacity for random or sequential number generation, a decision on the merits of Plaintiffs' claim will require the Court to address the very issue that the FCC is presently considering.

*Second and third*, Congress explicitly gave the FCC the power to implement and construe the TCPA. 47 U.S.C. § 227(b)(2). Specifically, the TCPA itself empowers the FCC to prescribe regulations under the Act (*see* 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2)), to exempt calls from the requirements of the Act (*see id.* §§ 227(b)(2)(B), 227(b)(2)(C)), to intervene in suits filed by state attorneys general (*see id.* § 227(f)(3)), and to enforce the provisions of the Act and its accompanying regulations. *See also Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) (outlining the FCC's role under the TCPA). Further, and germane to this lawsuit, the FCC has interpretive authority over the provisions of the TCPA and its accompanying regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984); *Charvat*, 630 F.3d at 467. In light of the explicit authority granted to the FCC under the TCPA, the FCC is the appropriate entity, and is best positioned to make a determination as to the proper construction of the TCPA and to specifically define more precisely the term "capacity"

*Fourth*, determination of the "capacity" issue requires FCC expertise and national uniformity. Although the TCPA defines an ATDS as equipment with the "capacity" to "store or produce numbers to be called, using a random or sequential number generator . . . and to dial such numbers," the TCPA does not define the term "capacity." Without FCC guidance, the word "capacity" is subject to a range of interpretations, with the broadest construction leading to the TCPA's application to consumer devices like the average smart phone, which has a *theoretical*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

capacity for random or sequential number generation.  However, such an outcome is illogical and at odds with the intent of Congress in passing the TCPA, a statute that was intended to regulate telemarketers.  *Telephone Consumer Protection Act of 1991*, Pub. Law 102–243, §§ 2(4), (5), December 20, 1991, 105 Stat. 2394 (Congressional Statement of Findings).

The illogic of giving "capacity" such a broad scope is captured in a recent opinion from a district court in the Northern District of Alabama, *Hunt v. 21st Mortg. Corp.*, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013).  The *Hunt* court, in considering an argument for a broad definition of "capacity," stated that "[t]he problem with this reasoning is that, in today's world, the possibilities of modification and alteration are virtually limitless," noting that it is "virtually certain that software could be written, without much trouble, that would allow iPhones" to fall under the auspices of the TCPA.  *Id.* at *4.  A limitless definition of capacity, the court concluded, could mean that "roughly 20 million American iPhone users [would be] subject to the mandates of § 227(b)(1)(A)."  *Id.*  As such, the court concluded that "to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have a present capacity, at the time the calls were being made, to store or produce and call numbers from a number generator."  *Id.*

This nonsensical outcome is just what may occur in the absence of any guidance from the FCC.  This is not a speculative risk: because of a recent flood of TCPA litigation, the courts have been—and will continue to be—compelled to attempt to define the term "capacity" without guidance from the FCC.  An ad-hoc approach to determining the proper scope of "capacity," however, "heightens the risk that individuals and companies will be subject to decisions pointing in opposite directions."  *Charvat*, 630 F.3d at 466.

Moreover, a stay is necessary to ensure national uniformity regarding the types of equipment that constitute an ATDS.  In enacting the TCPA, Congress intended to "promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations . . .[and] to avoid burdensome compliance costs for telemarketers." *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 ¶ 83 (2003).  The doctrine of primary jurisdiction is designed to ensure consistent and uniform application of the FCC rules. *See S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm'n*, 744 F.2d 1107, 1118 (5th Cir. 1984), *vacated*

– 11 –

1    *on other grounds*, 476 U.S. 1166 (1986) ("[T]hrough the application of the doctrine of primary

2    jurisdiction, the courts and the FCC should be able to prevent . . . significant inconsistent application

3    of FCC rules"). Here, because the TCPA does not define the term "capacity," there is a risk of

4    "significant inconsistent application of FCC rules" on this issue, making application of the primary

5    jurisdiction doctrine particularly critical. *Id.*

6           This uniformity principle applies with particular force here, as Plaintiffs contend the TCPA is

7    a strict liability statute subjecting defendants to potentially staggering monetary damages that could

8    be based on a faulty reading of the statute. *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d

9    768, 776 (11th Cir. 2011; FAC ¶¶ 68, 73, 83, 90. Permitting the FCC to speak first will avoid

10   unnecessary and improper findings of liability against parties that may ultimately be exonerated of

11   TCPA liability. *See United States v. W. Pac. R.R. Co*., 352 U.S. 59, 64 (1956) (allowing agency to

12   decide issue first ensures "the limited functions of review by the judiciary are more rationally

13   exercised").

14                  **2.      Recently Four Courts, Including Two in this Circuit, Stayed TCPA**

15                           **Lawsuits Based on the FCC Petitions Addressing "Capacity"**

16          Within the last several months, four district courts have stayed TCPA cases based on the

17   pending petitions before the FCC governing the interpretation of the term "capacity." In *Mendoza v.*

18   *UnitedHealth Grp. Inc.*, Judge Phyllis Hamilton of the Northern District of California stayed a

19   putative class action alleging violations of the TCPA, holding that the pending FCC Petitions

20   regarding what constitutes an ATDS directly overlapped with the legal issues raised in the plaintiff's

21   complaint. *Mendoza*, 2014 WL 722031, at *2. In that case, the plaintiff alleged that the defendant

22   violated the TCPA by initiating calls to her cellular telephone without her prior express consent

23   using an ATDS. *Id.* at *1. The defendant "contend[ed] that at the time of the alleged calls, it did not

24   utilize any capacity that its predictive dialer may have had to store or produce telephone numbers to

25   be called using a random or sequential generator, and to dial such numbers." *Id.* at *2. Judge

26   Hamilton observed that the FCC Petitions requesting clarification on the definition of "capacity"

27   were directly relevant to the issues raised in Mendoza's complaint. *Id.* For this reason, the court

28   held that "allowing the FCC to resolve the foregoing issues prior to adjudicating the issue in the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 12 –

present action, in order to obtain the benefit of the FCC's guidance, is appropriate." *Id.*

Just last month, the District Court of Kansas stayed a putative TCPA class action on the same grounds. *Higgenbotham v. Diversified Consultants, Inc.,* 13-2624-JTM, 2014 WL 1930885 (D. Kan. May 14, 2014). In *Higgenbotham*, the plaintiff alleged that the defendant violated the TCPA "by (1) using an automatic telephone dialing system to place non-emergency calls to her cellular telephone without her prior express consent and (2) using an artificial or prerecorded voice during the calls." *Id.* at *1. The defendant "acknowledge[d] that the dialing system it used to call plaintiff qualifie[d] as a predictive dialer," but argued that there was "uncertainty as to whether all predictive dialers meet the definition of an ATDS, or whether predictive dialers that lack the current capacity for random or sequential number generation do not meet the definition of an ATDS." *Id.* The court granted the defendant's motion to stay, explaining that although "the FCC has issued several orders and rulings on the general topic of whether predictive dialers meet the ATDS definition … none of these orders has addressed the specific 'capacity' question raised by defendant, as well as by Communication Innovators and YouMail." *Id.* at *3. The court concluded, "[b]ecause the issue defendant raises is presently pending before the FCC … the FCC must be allowed to resolve the issue initially under the doctrine of primary jurisdiction." *Id.* (internal quotations omitted).

Similarly, in *Hurrle*, the Western District of Washington granted a stay of a putative TCPA class action based on the primary jurisdiction doctrine, holding that "guidance on the 'capacity' of autodialing systems would further clarify the law that [plaintiff] seeks to enforce in this action." *Hurrle*, 2014 WL 670639, at *1. And more recently in *Passero v. Diversified Consultants, Inc.*, the Western District of New York stayed a TCPA lawsuit finding that "the advantages of deferring to the FCC's 'primary jurisdiction' over the issues raised by the TCPA claims in this case . . . outweigh the potential for costs resulting from further complications and delay in the administrative proceedings." *Passero*, 2014 WL 2257185, at *3. Following the decisions of *Mendoza*, *Higgenbotham*, *Hurrle*, and *Passero*, this Court should also stay this action pending the FCC's determination of the definition of an ATDS.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 13 –

3.    **A Stay is Particularly Appropriate in this Case Because the FCC is**

**Actively Considering the "Capacity" Issue and a Ruling is Imminent**

Granting a stay here is particularly appropriate because the FCC has indicated that a draft order with respect to the CI Petition is already circulating at the Commission and that an FCC ruling on the "capacity" issue is imminent.  *See* Gindi Decl., Exhs. D and K, FCC Publication, "TCPA: It is Time to Provide Clarity," FCC Commissioner Michael O'Reilly (March 25, 2014) ("[T]he problems caused by this lack of clarity [regarding the TCPA] are evidenced by an increasing number of TCPA-related law suits and a growing backlog of petitions pending at the FCC. . . That is why the FCC needs to address this inventory of petitions as soon as possible.").   Other courts, when faced with the likelihood of an imminent decision from an administrative agency, have granted stays.  *See, e.g.*, *Matlock,* 2014 WL 1155541, at *2 ("Defendant's petition is already before the FCC and comments are due in the near future [and] judicial economy weighs against issuing a decision that may be undermined by an anticipated ruling of the regulatory body[.]"); *Passero*, 2014 WL 2257185, at *3 (staying TCPA lawsuit "considering the recent correspondence between the FCC and Congress indicating the likelihood of a ruling on the pending petitions relatively soon"); *Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.*, 386 F. Supp. 2d 144, 151 (W.D.N.Y. 2005) (granting a stay where it appeared that an FCC decision "will be forthcoming in a matter of months"); *Gordon v. Church & Dwight Co.*, C 09-5585 PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) (granting a stay because "the FDA has stated that it is still considering public comments and other data in connection" with the issue in question).

In fact, a court in the Northern District of California concluded that a stay of a TCPA action was appropriate given several pending FCC petitions and the FCC's issuance of a Notice of Proposed Rulemaking regarding some of the issues.  *See Glauser v. Twilio, Inc.*, 2012 WL 259426, at *2-3 (N.D. Cal. Jan. 27, 2012).  The *Glauser* court recognized that "the likely wait for FCC guidance as to both will be shorter than average" and thereby concluded "allowing the FCC to resolve the foregoing issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate."  *Id.*  The same reasoning applies here and weighs in favor of granting a stay of this action.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

**B.      This Action Should be Stayed Because the FCC has Primary Jurisdiction to**

2    **Determine Whether a Caller is Liable Under the TCPA for Calling an**

3    **"Unintended Recipient"**

4          In addition to the "capacity" issue, this action should be stayed given the FCC's current

5    determination of another critical issue governing this case: "whether liability under the TCPA

6    attaches for non-telemarketing calls placed to reassigned or wrong wireless telephone numbers."

7    *Barrera v. Comcast Holdings Corp.*, 14-CV-00343-TEH, 2014 WL 1942829 at *3 (N.D. Cal. May

8    12, 2014).  Recently, Judge Thelton E. Henderson of the Northern District of California stayed a

9    TCPA action on the grounds that the FCC is currently considering whether a caller may be liable for

10   calling an "unintended recipient" if the caller had consent to call the phone number which was

11   "subsequently reassigned from one wireless subscriber to another."  *Barrera*, 2014 WL 1942829 at

12   *2.  In *Barrera*, the plaintiff alleged that the defendant "placed calls to her cellular telephone using

13   an automatic dialing system and/or a prerecorded voice in an attempt to collect an overdue balance

14   from a different person (the 'Debtor'), whom the Plaintiff d[id] not know, and for which Plaintiff

15   [wa]s in no way responsible."  *Id.* at *1.  The defendant averred that it did not intend to call the

16   plaintiff, but instead intended to call a different person who had "reasonably evidenced prior express

17   consent to be contacted at that number."  *Id.* (internal quotations omitted).  The defendant moved for

18   a stay based on two petitions currently pending before the FCC requesting the prescription of a good

19   faith exception where "prior express consent has been obtained but which, unbeknownst to the

20   calling party, [the phone numbers] have subsequently been reassigned from one wireless subscriber

21   to another."  *Id* at *2; Gindi Decl., Exh. J, at 7-9.  Judge Henderson granted the stay, explaining that

22   "a central issue presented in this case—whether liability under the TCPA attaches for non-

23   telemarketing calls placed to reassigned or wrong wireless telephone numbers—is already under

24   submission before the FCC in two pending petitions."  *Id.* at *3.  Notably, Judge Henderson

25   recognized the potential delay in awaiting the FCC's ruling, but explained that, "the Court does not

26   find that potential delay in awaiting a definitive ruling from the FCC on this highly relevant issue

27   outweighs issuance of the stay.  Issuing a decision in the interim that may be undermined by an

28   anticipated ruling of the FCC would run counter to the policy animating the primary jurisdiction

– 15 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

doctrine itself." *Id.* at *4.

Similarly, in *Heinrichs v. Wells Fargo Bank, NA*, Judge William Alsup of the Northern District of California was faced with a putative TCPA class action that also involved the "unintended recipient" issue. Judge Alsup stayed the case to allow the FCC to address whether TCPA liability "arises when a cell phone number is reassigned from someone who gave consent to someone who did not without notice to the caller." *Heinrichs v. Wells Fargo Bank, N.A.,* 2014 WL 2142457, at *2-3 (N.D. Cal. Apr. 15, 2014). District Courts across California and in other jurisdictions have stayed TCPA lawsuits on the same grounds. *See, e.g., Matlock v. United Healthcare Servs., Inc.*, 2:13-CV-02206-MCE-EF, 2014 WL 1155541, at *1 (E.D. Cal. Mar. 20, 2014) (staying putative class action where "[t]he dispute in this case thus turns, in large part, on whether the 'prior express consent of the called party' refers to the party the caller intended to reach or the actual recipient of the call"); *Gusman v. Comcast Corp.*, 2014 WL 2115472, at *3 (S.D. Cal. 2014) ("There are currently two pending proceedings before the FCC ready to be ruled on. These proceedings address whether there is liability under the TCPA for calls placed to a telephone number where consent had been previously given but the telephone number has been reassigned to someone who has not given consent. The public comment period has passed on both petitions. As to the rulemaking petition, the FCC must now either dispose of the petition, issue a notice of inquiry or a notice of proposed rulemaking."); *Higginbotham v. Hollins*, 2014 WL 2865730 (D. Kan. June 24, 2014) (staying putative class action so as to allow the FCC to decide "whether the 'prior express consent of the called party' refers to the party the caller intended to reach or the actual recipient of the call").

Here, Nationstar anticipates that the Court will be faced with the same unintended recipient issue that arose in *Barrera* and *Heinrichs*. The FAC alleges that Nationstar called Plaintiff Robert Jordan "for the purpose of collecting alleged debts" even though "Plaintiff Jordan does not have a mortgage held by, serviced by, or in any other way associated with Defendant Nationstar." FAC ¶ 16, 24. Likewise, Ruggles alleges that Nationstar called her and "ask[ed] to speak with Randall Fisher, a person whom Plaintiff [Ruggles] does not know." FAC, ¶ 49. These allegations establish that Nationstar intended to call its customers, but unintentionally called Jordan and Ruggles. The viability of Jordan and Ruggles' TCPA claims turns on the same issue as did *Barrera* and *Heinrich*

– 16 –

line of cases: whether TCPA liability "arises when a cell phone number is reassigned from someone who gave consent to someone who did not without notice to the caller." *Heinrichs,* 2014 WL 2142457, at *2-3. Because the unintended recipient issue is presently "under submission before the FCC in two pending petitions," a stay is warranted here on this basis also. *Id.*; Gindi Decl., Exh K ("That is why the FCC needs to address this inventory of petitions as soon as possible. Through this process, the FCC has the opportunity to answer important questions and provide much needed guidance on a variety of TCPA issues, including: . . . whether there is liability for calls made to reassigned phone numbers, . . . whether consent can be inferred from consumer behavior or social norms[.]").

## C.   This Action Should Be Stayed Because the FCC has Primary Jurisdiction to Determine Whether the TCPA Applies to Debt Collection Calls.

Finally, this case should be stayed pending guidance from the FCC over a third issue: whether the TCPA applies to calls made for the purpose of collecting a debt. Plaintiffs' TCPA claims are predicated on Nationstar's alleged debt collection calls. FAC at ¶¶ 13, 16, 35, 50. Accordingly, to decide the merits of Plaintiffs' TCPA claim, the Court must determine whether the TCPA applies to debt collection calls.

Indeed, earlier this year, the United States District Court for the Western District of Washington in *Hurrle v. Real Time Resolutions, Inc.* stayed a TCPA class action for exactly this reason. *Hurrle*, 2014 WL 670639, at *1. In *Hurrle* the plaintiffs alleged that the defendant utilized an ATDS to call debtors regarding unpaid debt. *Id.* The defendant moved to stay the case, in part, because the court would be required to address whether the TCPA applies to debt-collection calls. *Id.* The court granted the stay, explaining that "[t]he law is unclear whether Congress intended the TCPA to prevent [debt collection] activity. Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity. Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC." *Id.* Similarly, less than a month ago, the District Court of Kansas stayed a putative TCPA class action so as to allow the FCC to address "whether the TCPA applies to non-telemarketing (i.e. debt collecting) calls to cell phones." *Higginbotham v. Hollins*, 2014 WL 2865730 (D. Kan. June 24, 2014) ("The dispute in

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   this case turns, in large part, on (1) whether the TCPA applies to non-telemarketing (i.e. debt

2   collecting) calls to cell phones . . .   The parties disagree as to the state of the law on these two issues,

3   but they agree that both require an interpretation of the TCPA."); *Passero v. Diversified Consultants,*

4   *Inc.*, 2014 WL 2257185, at *2 (W.D.N.Y. 2014) ("With regard to the danger of inconsistent rulings,

5   the court need look no further than the split of case law authority on the threshold issue as to whether

6   the protective provisions of the TCPA even apply to debt collection calls.").  Following the *Hurrle*,

7   *Higginbotham*, and *Passero* decisions, this Court should stay this action pending an FCC ruling

8   clarifying whether the TCPA applies to debt-collection calls.

9         Here, Plaintiffs contend that Nationstar called them in order to collect outstanding debt.

10  FAC, ¶¶ 13, 16, 35, 50.  Moreover, Plaintiffs do not and cannot allege that they received a single

11  telemarketing call from Nationstar.  Therefore, the FCC's determination on whether the TCPA

12  applies to debt collection calls will govern the outcome of this case.

13                **V.**     **CONCLUSION**

14        For the foregoing reasons, Nationstar respectfully requests that the Court stay this action

15  pursuant to the primary jurisdiction doctrine until the FCC rules on the pending petitions.

16

17         DATED:  July 10, 2014            REED SMITH LLP

18

19                          By: */s/ Raymond Y. Kim*

20                              Abraham J. Colman

21                              Felicia Y. Yu
                                  Raymond Y. Kim

22                              Jack J. Gindi
                                  Attorneys for Defendant
                              Nationstar Mortgage, LLC

23

24

25

26

27

28

DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY
JURISDICTION DOCTRINE

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  I am employed in the office of a member of the bar of this court at whose direction the service was made.  My business address is REED SMITH LLP, 355 S. Grand Avenue, Suite 2900, Los Angeles, CA 90017.

On July 10, 2014, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet, as listed below.

**DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE**

| | |
|---|---|
| Mark Eisen<br>EDELSON PC<br>555 West Fifth Street, 31st Floor<br>Los Angeles, CA 90013<br>Telephone:  (213) 533-4100<br>Facsimile:   (213) 947-4251<br>E-Mail:    meisen@edelson.com<br>**ATTORNEYS FOR PLAINTIFFS AND THE PUNTATIVE CLASSES** | Steven L. Woodrow<br>Megan Lindsey<br>EDELSON PC<br>999 West 18th Street, Suite 3000<br>Denver, CO 80202<br>Telephone:  (303) 357-4878<br>Facsimile:   (303) 446.9111<br>E-Mail:     swoodrow@edelson.com<br>E-Mail:     mlindsey@edelson.com<br>**ATTORNEYS FOR PLAINTIFFS AND THE PUNTATIVE CLASSES** |

I declare under penalty of perjury under the laws of the United States that the above is true and correct.  Executed on July 10, 2014, at Los Angeles, California.

/s/Patty Keen
PATTY KEEN

– 19 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT NATIONSTAR MORTGAGE, LLC'S MOTION TO STAY PURSUANT TO THE PRIMARY
JURISDICTION DOCTRINE